**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TENNESSEE**
**WESTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>ROMAELL STOKES,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. 2:19-cr-20197-JPM |

**ORDER OVERRULING DEFENDANT'S LEGAL OBJECTIONS TO THE PRESENTENCE REPORT**

This cause is before the Court on Defendant Romaell Stokes's Objections to the Presentence Report filed on March 3, 2020.[1] (ECF No. 151.) Defendant objects to the Presentence Report's application of United States Sentencing Guideline § 2B3.1(b)(2)(D)'s "dangerous weapon" enhancement to Defendant's use of a BB gun during the commission of his convicted robberies. (See ECF No. 151 at PageID 466.) Specifically, Defendant objects to "paragraph 25, 38 and 45 [of the Presentence Report], and to the four-point enhancement for the use of a dangerous weapon under Section 2B3.1(b)(2)(D)." (Id.) Defendant relies on the Sixth Circuit's decision in United States v. Havis, 927 F.3d 382 (6th Cir. 2019), to argue that the Court should not give deference to definition of "dangerous weapon" offered by the application notes to the Guidelines, and that the Court should instead "exercise its authority and [ ] vary

[1] This Order only resolves Defendant's legal objections to the Presentence Report and will not resolve the other objections to the Report raised by Defendant, including Defendant's objections to the reduction of acceptance of responsibility.

downwards from the guideline calculation, based on the use of BB guns as opposed to more truly dangerous weapons." (Id. at PageID 467.)

The United States of America (hereinafter "the Government") asserts that Defendant's "dangerous weapon" challenge is "frivolous" and lacks legal merit, and the Government goes so far as to assert that raising the objection "constitutes conduct that voids granting the full acceptance of responsibility credit." (ECF No. 163 at PageID 515.) The Government asserts that courts in the Sixth Circuit employ a "functional approach" to determine what constitutes a dangerous weapon, and that a dangerous weapon may include a number of items otherwise not considered dangerous, including "walking sticks, leather straps, rakes, tennis shoes, rubber boots," and other ordinarily innocuous objects. (Id. at PageID 516.) The Government also cites to several cases from the Sixth Circuit, including United States v. Woodard, 24 F.3d 872 (6th Cir. 1994), to support the proposition that a BB gun qualifies as a dangerous weapon for purposes of § 2B3.1's sentencing enhancement. (Id. at PageID 516–17.)

Defendant filed his Supplemental Position with Regard to the Sentencing Factors on April 9, 2020. (ECF No. 164.) Defendant argues that his legal objections are not frivolous but rather represent a good faith argument for the extension of existing legal principles. (Id. at PageID 523–26.)

For the reasons set forth below, Defendant's legal objection to the Presentence Report are **OVERRULED**.

## I. BACKGROUND

On July 25, 2019, a grand jury in the Western District of Tennessee indicted Defendant Romaell Stokes on several counts of armed robbery committed between November 2018 and February 2019. (Indictment, ECF No. 1.) Defendant was charged with one count of conspiracy

to commit Hobbs Act Robbery and six counts of Hobbs Act Robbery in violation of 18 U.S.C. § 1951. (Id. at PageID 1–5.) On November 14, 2019, Defendant pled guilty to four counts of Hobbs Act Robbery, and the Government dismissed count one of the Indictment (Hobbs Act conspiracy) and two other counts of Hobbs Act Robbery. (ECF Nos. 84–86.)

On February 3, 2020, the United States Probation Office filed its final Presentence Report. (ECF No. 115.) The Presentence Report applied a four level "dangerous weapon" enhancement under United States Sentencing Guideline § 2B3.1(b)(2)(D) because during the commission of the robberies Defendant "pointed a BB gun at the [store] employees and demanded money." (Presentence Report, ECF No. 115 at PageID 300, ¶¶ 18, 24; PageID 302 ¶ 38.) The Government filed its Position Regarding the Presentence Report on February 7, 2020. (ECF No. 123.) Defendant filed his Position Regarding the Presentence Report on March 3, 2020. (ECF No. 151.) The Probation Office filed a Supplemental Presentence Report on March 5, 2020, justifying its interpretation of the BB gun enhancement based on the application notes to the Guidelines commentary. (ECF No. 152 at PageID 500–01.) The Court held a hearing on March 6, 2020, at which time the Court ordered the parties to file supplemental briefing on the issue of whether a BB gun, as used by Defendant, qualifies as a dangerous weapon under the Guidelines. (ECF No. 153.) The Government filed its position on April 6, 2020. (ECF No. 163.) Defendant filed his position on April 9, 2020. (ECF No. 164.)

## II. ANALYSIS

### A. Section 2B3.1(b)(2)(D) and the Havis Decision

United States Sentencing Guideline § 2B3.1(b)(2)(D) provides a four-level sentencing enhancement for robberies "if a dangerous weapon was otherwise used . . . ." U.S.S.G. § 2B3.1(b)(2)(D). The application note to § 2B3.1 defines a "dangerous weapon" to include an

"object [that] closely resembles an instrument capable of inflicting death or serious bodily injury; or [ ] the defendant used the object in a manner that created the impression that the object was an instrument capable of inflicting death or serious bodily injury . . . ."[2] U.S.S.G. § 2B3.1(b)(2)(D), cmt. n. 2.

The Supreme Court has held that the Commentary to the Guidelines are "authoritative . . . unless [the Commentary's interpretation] violates the Constitution or a federal statute, or is inconsistent with, or a plainly erroneous reading of, that guideline." Stinson v. United States, 508 U.S. 36, 38 (1993); see also United States v. Rahim, 771 F. App'x 605, 614 (6th Cir. 2019) (referring to this doctrine of deference as "Stinson Deference"). The Sixth Circuit in Havis dealt with the issue of the appropriate level of deference a court should give to a Guideline commentary application note interpreting portions of the Guidelines. 927 F.3d at 382. In Havis the defendant asserted that "the Sentencing Commission has no power to add attempt crimes to the list of offenses in § 4B1.2(b) through commentary." Id. at 384.

The Havis court first noted the Commission's unique dual legislative and judicial nature and that "two constraints—congressional review and notice and comment—stand to safeguard the Commission from uniting legislative and judicial authority in violation of the separation of powers." Id. at 385–86; see also United States v. Owens, 940 F.3d 308, 314 (6th Cir. 2019)

---

[2] This application note only explicitly applies to § 2B3.1(b)(2)(E), but § 1B1.1's "Application Instructions" provide a definition of dangerous weapon for § 2B3.1(b)(2)(D):

> "Dangerous weapon" means (i) an instrument capable of inflicting death or serious bodily injury; or (ii) an object that is not an instrument capable of inflicting death or serious bodily injury but (I) closely resembles such an instrument; or (II) the defendant used the object in a manner that created the impression that the object was such an instrument (e.g. a defendant wrapped a hand in a towel during a bank robbery to create the appearance of a gun).

U.S.S.G. § 1B1.1, cmt. n. 1(E). This definition is identical to that used in § 2B3.1's application note. The Court will refer to this definition of dangerous weapon in its analysis in addition to the same definition provided for by § 2B3.1(b)(2)(E).

("[The application notes and supporting commentary's interpretation of the Guidelines], of course, [are] not binding in the way an agency rule would be, where the rule has journeyed through a formal rule-making process, including the notice and comment aspects."). These added safeguards do not constrain the Commentary's interpretation of these rules. Id. at 386. The Sixth Circuit reasoned that the "commentary has no independent legal force—it serves only to *interpret* the Guidelines' text, not to replace or modify it." Id. (citing Stinson, 508 U.S. at 44–46); United States v. Rollins, 836 F.3d 737, 742 (7th Cir. 2016)) (emphasis in original). The Sixth Circuit held that the "[c]ommentary binds courts only 'if the guideline which the commentary interprets will bear the construction.'" Id. (quoting Stinson, 508 U.S. at 46). Courts are not bound to accept a commentary application note's interpretation of the Guidelines if the interpretation is "'plainly erroneous or inconsistent with the' corresponding guideline." Id. (quoting Stinson, 508 U.S. at 46).

The Sixth Circuit in Havis found that the meaning of "controlled substance offenses" under § 4B1.2(b) did not bear the construction of the term provided by the applicable commentary application note, which included "attempt" crimes within the term's definition. Id. at 386–87. The application note added an offense to the Guidelines provision, which made no mention of attempt crimes, and therefore could not reasonably be interpreting the terms of the Guidelines. Id. at 386–87. Because "application notes are to be *interpretations of*, not *additions to*, the Guidelines themselves," the note's addition of attempt crimes deserved no deference. Id. at 386 (quoting Rollins, 836 F.3d at 742) (emphasis in original) (internal quotation marks omitted). If courts were to include attempt crimes within the definition of controlled substance offenses by way of the commentary, "the institutional constraints that make the Guidelines

constitutional in the first place—congressional review and notice and comment—would lose their meaning." Id. (citing United States v. Winstead, 890 F.3d 1082, 1092 (D.C. Cir. 2018)).

**B. Application of Havis to § 2B3.1(b)(2)(D) Note 2**

The commentary application note's interpretation of the term "dangerous weapon" as used in § 2B3.1(b)(2)(D) is not "plainly erroneous or inconsistent with the corresponding guideline." That is, the definition of "dangerous weapon" "bears the construction" offered by the application note's interpretation of the term.

Unlike in Havis, the application note's definition does not "add" to the definition of dangerous weapon in the same way that the interpretation offered by the application note at issue in Havis added attempt crimes to the definition of controlled substance offenses. See id. at 386. Application note 2 of the commentary to § 2B3.1 (and § 1B1.1's identical definition) defines the term dangerous weapon to include an "object that closely resembles an instrument capable of inflicting death or serious bodily injury." It does not merely add BB guns or other objects to a list of weapons that qualify as dangerous weapons, as did the application note at issue in Havis. Compare U.S.S.G. § 4B1.2(b), cmt. n. 1, with U.S.S.G. § 2B3.1(b)(2)(D), cmt. n. 2; see also Havis, 927 F.3d at 386. Instead, it offers a reasonable clarification of the applicable guideline.

The application note's interpretation is also strongly supported by circuit precedent. Case law from both the Sixth Circuit and other circuits firmly support the proposition that the term "dangerous weapon" encompasses the use of a BB gun, or some other object that closely resembles a real firearm, when it is used in a manner consistent with a firearm in the commission of a robbery. See, e.g., United States v. Woodard, 24 F.3d 872, 873–74 (6th Cir. 1994) (finding that a toy gun qualified as a dangerous weapon under § 1B1.1's commentary application note); United States v. Medved, 905 F.2d 935, 940 (6th Cir. 1990) (toy gun that looked like a real gun

could be considered a dangerous weapon); United States v. Winters, 247 F. App'x 665, 667 (6th Cir. 2007) (affirming a four-level sentencing enhancement under § 2B3.1(b)(2)(D) when defendant "pointed [a BB gun] at the bank employees" during the robbery); United States v. Dunigan, 555 F.3d 501, 507 (5th Cir. 2009) (a BB gun qualified as a "dangerous weapon" because it was "capable of inflicting 'serious bodily injury,'" was pointed at robbery victims during the robbery, and the defendant used "the gun as though it were a more dangerous firearm to threaten the bank employees"); United States v. Villar, 586 F.3d 76, 90 (1st Cir. 2009) (affirming district court's four-level enhancement for threatened use of a BB gun during a bank robbery under the Guidelines); United States v. Hano, 922 F.3d 1272, 1296 (11th Cir. 2019) (defendant who used a toy gun was subject to the four-level enhancement under § 2B3.1(b)(2)(D) because "defendants who otherwise use an object which appears to be a dangerous weapon will be subject to a four-level enhancement" (quoting United States v. Miller, 206 F.3d 1051, 1053 (11th Cir. 2000))); United States v. Bell, 947 F.3d 49, 62 (3d Cir. 2020) ("[The Sentencing Guidelines commentary] clearly instructs that objects that appear to be dangerous weapons shall be considered dangerous weapons for purposes of § 2B3.1." (quoting United States v. Orr, 312 F.3d 141, 144 (3d Cir. 2002))).

Because the section "does not purport to add to or change the ordinary understanding of the section, as [the Sixth Circuit and most circuits] largely embrace the interpretation included in the Application Note," the Court finds no reason to deviate from the longstanding interpretation of "dangerous weapon" as to include BB guns and toy guns that are used in a manner consistent with an actual firearm during the commission of a robbery. Owen, 940 F.3d at 314.

Havis also does not prevent a district court from considering the Guidelines' commentary in determining whether a sentencing enhancement is appropriate, nor does the Havis decision

invalidate all parts of the Guidelines' commentary. United States v. Glenn, No. 1:17-cr-00413, 2020 WL 11400773, at *3 (N.D. Ohio Mar. 9, 2020). Havis does not impact the Supreme Court's holding in Stinson v. United States, which provides that "commentary in the Guidelines Manual that interprets or explains a guideline *is authoritative unless* it violates the Constitution or a federal statute, or is inconsistent with, or a plainly erroneous reading of, that guideline." 508 U.S. at 38 (emphasis added); see also Havis, 927 F.3d at 386. The Sentencing Commission's interpretation of dangerous weapon is authoritative unless it can be proven that the Sentencing Commission's interpretation is unconstitutional, violates federal statute, or is inconsistent with the Guidelines themselves. Because Defendant has not alleged that the interpretation is unconstitutional or violates federal statute, and because the broader view of dangerous weapon is not plainly erroneous or inconsistent with the reading of the Guidelines (given the significant circuit precedent supporting this reasoning), the Court finds the statement authoritative.

Finally, Defendant argues that other federal statutes provide a narrower, or better, definition of "dangerous weapon" and specifically directs the Court to 18 U.S.C. § 930's definition of the term. (See ECF No. 151 at PageID 467.) That section prohibits the possession of firearms or other dangerous weapons in federal facilities. See 18 U.S.C. § 930(g)(2). Section 930 defines "dangerous weapon" as a "weapon, device, instrument, material, or substance, animate or inanimate, that is used for, or is readily capable of, causing death or serious bodily injury . . . ." 18 U.S.C. § 930(g)(2).

The definition of dangerous weapon for purposes of federal firearms crimes is not the appropriate statutory definition to look to when determining whether the Sentencing Guidelines' robbery provisions "bear the construction" of dangerous weapon as provided in the commentary notes. Other federal robbery statutes provide a more appropriate definition of "dangerous

weapon." In particular, the federal bank robbery statute explicitly uses the term "dangerous weapon." See 18 U.S.C. § 2113(d). Several circuits agree that the threatened use of a BB gun or toy gun in the commission of a bank robbery qualifies under 18 U.S.C. § 2113 as the use of a "dangerous weapon." See, e.g., Medved, 905 F.2d at 940 (use of toy gun that looked like a real gun qualified as a dangerous weapon under § 2113(d)); United States v. Cannon, 903 F.2d 849, 855 (1st Cir. 1990) (same); United States v. Martinez-Jimenez, 864 F.2d 664, 668 (9th Cir. 1989) (same). This broader definition of dangerous weapon makes sense because, in the context of robbery, the "robber who carries a toy gun during the commission of a bank robbery creates some of the same risks as those created by one who carries an unloaded or inoperable genuine gun." Medved, 905 F.2d at 940 (quoting Martinez-Jimenez, 864 F.2d at 666–67). "[T]he robber subjects victims to greater apprehension[,] . . . the robber requires law enforcement agencies to formulate a more deliberate, and less efficient, response in light of the need to counter the apparent direct and immediate threat to human life[,] [and] . . . the robber creates a likelihood that the reasonable response of police and guards will include the use of deadly force" when he uses a BB gun in the commission of a robbery. Id. These reasons apply equally to § 2B3.1's definition of dangerous weapon as applied to Hobbs Act Robbery, as the only difference between Hobbs Act Robbery and bank robbery, i.e., the location of the robbery, has no material bearing on the effect that the use of a BB gun has on the victim of the robbery and the police response to the robbery. Section 2B3.1's definition of dangerous weapon to include BB guns therefore comports closely with the statutory interpretation of "dangerous weapon" in the context of robbery statutes, the crimes to which § 2B3.1 applies.

In summary, the Sixth Circuit's holding in Havis does not prevent the Court from giving Stinson Deference to the application note defining the term "dangerous weapon" as used in

§ 2B3.1(b)(2)(D)'s sentencing enhancement, as the note's interpretation is neither plainly erroneous nor inconsistent with the Guidelines' robbery provisions. The Court therefore finds that a BB gun qualifies as a dangerous weapon for purposes of § 2B3.1(b)(2)(D)'s four-level sentencing enhancement.

## III. CONCLUSION

For the reasons set forth above, Defendant's legal objection to his sentence is **OVERRULED**.

**SO ORDERED**, this 10th day of June, 2020.

/s/ Jon P. McCalla
JON P. McCALLA
UNITED STATES DISTRICT JUDGE